NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-954

KRISTINE L. ANDREN

vs.

MICHAEL J. FUCCI.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Michael J. Fucci (father) appeals from two judgments issued by a Probate and Family Court judge, one a final judgment on the bifurcated complaint of Kristine L. Andren (mother) to establish paternity of the parties' child and set child support, and the second a judgment on the mother's complaint for contempt for failure to pay child support.  On appeal, the father argues that in ordering him to pay child support, the judge abused her discretion in calculating the parties' income.  We vacate so much of the final judgment as pertains to child support.  We remand for the limited purpose of further factual findings on the issue of the mother's income and for recalculation of the father's child support obligations.  We otherwise affirm.

Background.  Beginning in January 2018, the parties dated for about one year; they never married each other.  During their relationship, the father paid for the parties to stay in hotel rooms as many as five days a week, frequented a casino where he gambled large amounts of money, and bought restaurant meals and luxury gifts for the mother.  In the spring of 2018, the mother became pregnant.  By January 1, 2019, the parties ended their relationship.

In 2019, the parties' child was born.  The mother is the child's primary caregiver and has sole physical and legal custody.  The father does not have a relationship with the child.  For fifty-eight weeks after the child's birth, the father failed to contribute any financial support for the child.

In September 2019, the mother filed the complaint to establish paternity, also seeking child support.  In February 2020, an order entered adjudicating the father's paternity of the child.  The parties jointly stipulated to a temporary order requiring the father to pay $200 per week in child support beginning on February 24, 2020.  In February 2022, the mother filed the complaint for contempt, alleging that the father was $2,200 in arrears in paying child support.

The case was tried on so much of the paternity complaint as claimed child support, and on the contempt complaint.  In setting child support, the judge considered the testimony of

2

both parties as well as documentary evidence including the parties' financial statements and the father's tax returns and business records. The judge found that the father was $2,200 in arrears in paying child support.

The mother was unemployed and received weekly social security disability insurance (SSDI) benefits. Given her disability, the judge did not impute any income to the mother.

The father testified that he was willing to pay child support, which the judge credited; she also found that the father "could not offer an amount he believes he should pay for [the child]'s support." As of trial, the father was self-employed as a chef and owner of a restaurant that he had opened in June 2019. From evidence including the amounts of the owner's draw that the father had taken from the restaurant, the judge made factual findings as to the father's weekly income in 2019, 2020, 2021, and the first quarter of 2022. Based on those weekly income amounts, the judge calculated the amounts of child support using the 2018 and 2021 Massachusetts Child Support Guidelines. On so much of the bifurcated complaint to establish paternity as sought child support, judgment entered ordering the father to pay child support, including the amounts in arrears.

A contempt judgment also entered for the father's failure to pay child support.  The father appeals from both judgments.[1]

Discussion.  1.  The father's income.  Our review of a judgment setting child support is "limited to whether the judge's factual findings were clearly erroneous, whether there were other errors of law, and whether the judge appears to have based [her] decision on the exercise of sound discretion." Lizardo v. Ortega, 91 Mass. App. Ct. 687, 691-692 (2017).  "The method for calculating and modifying child support orders is governed by statute and by the [Massachusetts Child Support Guidelines (Guidelines)]."  Morales v. Morales, 464 Mass. 507, 509-510 (2013).  The Guidelines broadly define "income" as "gross income from whatever source, regardless of whether that income is recognized by the Internal Revenue Code or reported to the Internal Revenue Service or state Department of Revenue or other taxing authority."  Guidelines § I(A) (Aug. 2021).  See Wasson v. Wasson, 81 Mass. App. Ct. 574, 577 (2012).

The father argues that the judge erred in calculating his income from evidence including the amounts of his owner's draws from the restaurant, as well as donations from an online crowdfunding campaign that he created in the spring of 2021 to

_____

[1] Where both judgments entered on the same date and the notice of appeal identifies the judgments at issue only by date, we treat the father's appeal as from both judgments.

4

fund the restaurant. The father argues that the judge improperly "disregarded" his testimony that the draws were used to pay business expenses and to repay a loan from his wife, and the judge improperly "discredited" his testimony that his wife was a fifty percent owner in the business; the father contends that the judge should have "simply divided the owner's draw in half."[2] We are not persuaded.

When the judge calculated the father's income from his self-employment as a chef, the judge made multiple findings that supported a conclusion that the father commingled his business and personal expenditures.[3] See Whelan v. Whelan, 74 Mass. App. Ct. 616, 626-627 (2009). See also Guidelines § I(C) (Aug. 2021). The judge did not abuse her discretion in making those factual findings, particularly given the lack of documentation of the father's claims that the owner's draws were used for business expenditures or to repay a loan from his wife. See

---

[2] On appeal, the father misstates the judge's findings in arguing that the judge impermissibly included owner's draws as income for 2019. The judge's findings were based on the father's lifestyle, cookbook sales, his decision to open a restaurant, and the business records from the restaurant. No owner's draws were included in that sum.

[3] The judge found that the father's business bank account was used to pay for his and his wife's personal expenses; the father intermingled use of business credit cards for personal use; the father wrote checks transferring funds between his business account and his personal account; and the father paid for his personal legal fees using the business account.

5

Smith-Clarke v. Clarke, 44 Mass. App. Ct. 404, 406 (1998) (upholding judge's finding that "additional income . . . was camouflaged as business income, with the business paying for somewhat lavish personal expenses as if they were expenses of the business"). See also Croak v. Bergeron, 67 Mass. App. Ct. 750, 758 (2006).

Similarly, the judge did not abuse her discretion in finding that the father is the sole owner of the restaurant. The judge was not required to credit the father's testimony that his wife is a part owner, particularly because the father stipulated that he is "the sole manager and currently owns and operates" the restaurant. See Whelan, 74 Mass. App. Ct. at 619 (accepting facts unless clearly erroneous). See also Johnston v. Johnston, 38 Mass. App. Ct. 531, 536 (1995) ("the credibility of a party . . . who appeared at trial is quintessentially the domain of the trial judge").

The father also argues that the judge abused her discretion in finding that the father's income in 2019 was "at least $95,000." In calculating that amount, the judge considered the father's tax returns and the restaurant's business records from the latter half of 2019. The judge also considered the father's "lifestyle in 2018" and his profit from publication of a cookbook. The father contends that doing so was error because his spending in 2018 was "irrelevant" to his income in 2019

6

because it was "before the child's birth," and there was insufficient evidence to attribute income based on sales of his cookbook. We disagree.

The judge found that the father's "financial statements and reporting of his income, expenses, assets and liabilities are inconsistent and contradictory," and thus "wholly unreliable." It was thus within the judge's broad discretion to impute income based on all the evidence, including the father's "lifestyle, expenses and spending patterns." Guidelines § I(D) (Aug. 2021).[4] See M.C. v. T.K., 463 Mass. 226, 240 (2012) (imputation of income "appropriate where a party has made vague, misleading, or untruthful entries on a financial statement"). See also Croak, 67 Mass. App. Ct. at 755.

Moreover, when a judge calculates a child support award, that judge must consider the child's needs, which "are to be defined, at least in part, by their parents' standard of living." Brooks v. Piela, 61 Mass. App. Ct. 731, 737 (2004). See Guidelines, principles par. 2 (Aug. 2021). It was not an abuse of discretion to consider the father's lifestyle during the parties' relationship in 2018, which was mere months before the child's birth, where findings about the father's spending

---

[4] The same language appears in the 2018 version of the Guidelines.

7

illustrated his standard of living and therefore the child's needs. See Macri v. Macri, 96 Mass. App. Ct. 362, 368 (2019) (upholding unallocated support award where judge considered prior "upper-class" standard of living though lifestyle had since deteriorated).

As to the father's claim that there was no evidence to impute income based on the sales of his cookbook, it is unavailing. When asked if his cookbook, which was published in about 2018, was still being sold online, the father testified that he did not think so; the judge did not credit that testimony. The judge noted that the husband's 2018 tax return reported "[o]ther income" of $60,256, referring to an attachment that the father did not provide to the judge. The judge found it "more likely than not" that that amount was royalty income from cookbook sales. We find no reason to disturb the judge's imputation of income here, where imputation was justified by the father's underreported income and financial misrepresentations. See M.C., 463 Mass. at 240; Johnston, 38 Mass. App. Ct. at 535.

2. The mother's income. The father also argues that the judge abused her discretion in declining to impute income to the mother or make factual findings as to the mother's earning capacity, given that the mother "received, at a minimum, disability payments."

8

The judge noted that the mother's financial statements reflect that she received weekly disability income of $205 as of June 2020 and July 2021, and $238 as of June 2022; the judge found that this benefit was for the mother and not a dependency benefit for the child. The mother also testified at trial that she was receiving Social Security disability payments. However, it is unclear how the judge considered this evidence in calculating the mother's income for the purposes of determining the father's child support obligations. See Guidelines § I(A)(9) (Aug. 2021). See also Schmidt v. McCulloch-Schmidt, 86 Mass. App. Ct. 902, 903 (2014) (affirming judgment where custodial mother's SSDI benefits were attributed as gross income). Accordingly, we remand for the judge to make further findings clarifying what, if any, of the mother's income was used to calculate the father's child support obligations and for recalculation of same.

The father seems to be arguing that the judge should have attributed additional income to the mother because she is capable of working. Attribution of income is appropriate where a party is voluntarily underemployed or unemployed, or capable of earning more with reasonable effort. See Emery v. Sturtevant, 91 Mass. App. Ct. 502, 509 (2017). See also Guidelines § I(E) (Aug. 2021). That was not the case here, where the judge believed the mother's testimony that she is

9

disabled and receives disability benefits because she is unable to or limited in her capacity to work.  See Guidelines § I(E)(3) (requiring judge to consider health of parent when attributing income).  See also Emery, supra.

Conclusion.  We vacate paragraphs 2, 3, and 4 of the final judgment on the bifurcated complaint to establish paternity dated April 14, 2023.  The matter is remanded for the limited purpose of further findings clarifying what, if any, of the mother's income was used to calculate the father's child support obligations beginning January 15, 2019, and for recalculation of the father's child support obligations consistent with this memorandum and order.  The father shall pay temporary child support of $691 per week during the pendency of the remand unless otherwise ordered by the judge.  The final judgment is otherwise affirmed.  The judgment of contempt dated April 14, 2023, is affirmed.

So ordered.

By the Court (Ditkoff,
  Grant & Toone, JJ.[5]),

Clerk

Entered:  March 27, 2025.

---

[5] The panelists are listed in order of seniority.

10